IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 09-22355-CV-MOORE/SIMONTON

MARTHA SOCARRAS,

    Plaintiff,

vs.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY, et al.,

    Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

THIS CAUSE came before the Court upon Defendants' Motion for Summary Judgment (dkt # 4). Plaintiff filed a Response in Opposition (dkt # 5). Defendants also filed a Reply (dkt # 6).

UPON CONSIDERATION of the Motion, Response, Reply, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

**I.    BACKGROUND**

This case involves a petition for *de novo* review of an application for naturalization. Plaintiff Martha Socarras ("Socarras"), a native and citizen of Columbia, first entered the United States in 1990 and was admitted as a B-2 visitor. She returned to the United States on July 22, 1997, and was allowed to remain in the United States until July 31, 1998, so that she could adjust her status. On December 8, 1999, Socarras was convicted of conspiracy to file false claims against the United States Department of Health and Human Services ("HHS"), mail fraud, and paying kickbacks. As a result, Socarras was sentenced by Judge James Lawrence King, United States District Judge, Southern District of Florida, to two years' imprisonment and three years'

supervised release. Judge King ordered $1,114,676.04 in restitution and awarded actual loss to the victims in the amount of $700,000.000. Socarras, however, was only ordered to pay $500,000 in restitution because of her inability to pay the full amount. On January 7, 2002, Socarras was placed in removal proceedings under Section 212(a)(2)(A)(i)(1) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(2)(A)(i)(1), for having been convicted of a crime involving moral turpitude. On March 13, 2002, an Immigration Judge granted Socarras waiver pursuant to INA § 212(i),[1] 8 U.S.C. § 1182(i), and approved her application for lawful permanent residence under INA § 245, 8 U.S.C. § 1255, despite her being otherwise inadmissible due to her December 1999 conviction.

Socarras filed an application for naturalization with the Department of Homeland Security, United States Citizenship and Immigration Services ("USCIS") on March 19, 2007. Socarras attended an initial interview regarding her application on July 1, 2008. On October 2, 2008, USCIS denied Socarras' application for naturalization finding that she lacked good moral character, a requirement under INA § 316, 8 U.S.C. § 1427. USCIS determined that Socarras' December 1999 conviction was an aggravated felony under INA § 101(a)(43)(M)(i), 8 U.S.C. § 1101(a)(43)(M)(i), as it was a fraud offense in which the loss to the victims exceeded $10,000. On November 7, 2008, Socarras requested a hearing on USCIS' decision pursuant to INA § 336(a), 8 U.S.C. § 1447(a). USCIS denied Socarras' request for a hearing on May 27, 2009, finding that Socarras' December 1999 conviction was an aggravated felony and, therefore, Socarras was precluded from naturalization. Socarras filed the instant Petition (dkt # 1) on August 10, 2009, claiming that because she was granted a waiver and received her legal

---

[1] It is unclear whether Socarras was granted an INA § 212(i) waiver or an INA § 212(h) waiver. The distinction, however, is not material to the disposition of this case.

permanent resident status, she should "thus be granted her citizenship/naturalization as well." (Pl. Pet. ¶ 10(i).)

## II.     STANDARD OF REVIEW

The applicable standard for reviewing a summary judgment motion is unambiguously stated in Rule 56(c) of the Federal Rules of Civil Procedure:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Summary judgment may be entered only where there is no genuine issue of material fact. Twiss v. Kury, 25 F.3d 1551, 1554 (11th Cir. 1994). The moving party has the burden of meeting this exacting standard. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). An issue of fact is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. Id.

In applying this standard, the district court must view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. Id. However, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

3

### III. ANALYSIS

Defendants request summary judgment on the grounds that Socarras' December 1999 conviction bars her from showing good moral character for naturalization. Socarras has raised three arguments in her defense: (1) Socarras' December 1999 conviction does not satisfy the aggravated felony definition under INA § 101(a)(43)(M)(i) requiring a loss to the victim in excess of $10,000 because her conviction did not require the United States to prove any amount of loss; (2) the USCIS improperly considered her December 1999 conviction as a basis to deny her application for naturalization; and (3) material facts are in dispute. Although Socarras failed to timely file her Response in accordance with Local Rule 7.1(C), the Court will, nonetheless, address the merits of the Motion.

Socarras is seeking naturalization, or citizenship. "No alien has the slightest right to naturalization unless all statutory requirements are complied with." United States v. Ginsberg, 243 U.S. 472, 474-75 (1917). "There must be strict compliance with all the congressionally imposed prerequisites to the acquisition of citizenship." Fedorenko v. United States, 449 U.S. 490, 506 (1981). An individual petitioning for naturalization bears the burden of proving, by a preponderance of the evidence, that he or she has complied with the statutory requirements. Berenyi v. Dist. Dir., INS, 385 U.S. 630, 637 (1967). Any doubts are resolved in favor of the United States. Id. The requirements for naturalization are set forth in the INA. A lawful permanent resident bears the burden to prove his or her eligibility to become naturalized as a United States citizen by establishing two primary requirements: (1) residency; and (2) good moral character. See INA §§ 316(a), 316(3); 8 U.S.C. §§ 1427(a), 1427(e), 1430, 1429; 8 C.F.R. §§ 316.5, 316.10, 319. These two requirements promote identification with the principles of our

Constitution. See 8 C.F.R. § 316.11. At issue here is whether Socarras has the requisite good moral character to be granted naturalization.

  A.  Socarras' Argument that her Conviction of Conspiracy Does Not Satisfy the Aggravated Felony Definition Under INA § 101(a)(43)(M)(i)

An applicant for naturalization who has been convicted of an aggravated felony, as defined by INA § 101(a)(43)(M)(i), is precluded from establishing good moral character. INA § 101(f)(8); 8 U.S.C. § 1101(f)(8). Section 101(a)(43)(M)(i) provides in pertinent part: "The term 'aggravated felony' means . . . an offense . . . that involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." INA § 101(a)(43)(M)(i); 8 U.S.C. § 1101(a)(43)(M)(i). Because the conspiracy statute under which Socarras was convicted, 18 U.S.C. § 371, does not contain a monetary threshold, Socarras argues that her conviction fails to satisfy the $10,000 loss threshold in § 101(a)(43)(M)(i). Her argument, however, has been foreclosed by the Supreme Court in Nijhawan v. Holder, ___ U.S. ___, 129 S.Ct. 2294 (2009). In Nijhawan, the petitioner, like Socarras, was convicted of conspiracy to commit fraud under 18 U.S.C. § 371, as well as other fraud and deceit crimes that did not include a monetary loss threshold. Id. at 2298. The Court rejected the petitioner's argument that the $10,000 loss threshold in § 101(a)(43)(M)(i) required that the petitioner be convicted of a crime that includes such a threshold as an element of the crime. Id. at 2302. The Court held, instead, that the $10,000 loss threshold "applies to the specific circumstances surrounding an offender's commission of a fraud and deceit crime on a specific occasion." Id. In other words, as long as the commission of a fraud and deceit crime involves a loss to the victims exceeding $10,000, it is irrelevant that the actual elements of the offense for which the person was convicted do not contain such a loss threshold. Id. at 2301-02.

5

The $10,000 loss threshold, however, must be proven by the government by clear and convincing evidence and must be tied to the conviction. Id. at 2303.

Here, Socarras' conviction for conspiracy to defraud HHS involved an actual loss to the victims of $700,000, for which Socarras was ordered to pay $500,000 as restitution. (Def. Mot. Sum. Judg. Ex. 4-3 at 4.) Socarras has conceded this fact. In light of the restitution order provided by the Defendants and Socarras' concession of the loss amount, the Defendants have proven by clear and convincing evidence that the loss to the victims of her fraud crime exceeded $10,000. See Nijhawan, 129 S.Ct. at 2304 (holding the government had proven the loss by clear and convincing evidence in light of producing the court's restitution order coupled with defendant's stipulation showing the loss exceeded $10,000).

    B.    <u>Socarras' Argument that USCIS Improperly Considered Her December 1999 Conviction as a Basis to Deny Her Application for Naturalization</u>

1. Socarras' INA § 212(i) Waiver

On March 13, 2002, an Immigration Judge granted Socarras a waiver, pursuant to the INA, allowing her to become a legal permanent resident. Socarras argues that in light of the waiver she was granted upon her application to become a legal permanent resident, her December 1999 conviction cannot be used as a basis to deny her instant application for naturalization. While both Socarras and the Defendants cite an INA § 212(h) waiver in their Summary Judgment pleadings, Socarras' Petition and her request for a hearing on USCIS's denial of her application both state that Socarras received an INA § 212(i) waiver. (Pl. Pet. ¶ 10(i); Def. Mot. Sum. J Ex. 4-5 at 2.) The distinction, however, is not material to the instant

Motion. Both § 212(h)[2] and § 212(i)[3] allow an immigration judge to waive an alien's inadmissibility, permitting them to become a legal permanent resident.

As Defendants point out, waivers granted under § 212(h) and § 212(i) are similar to a waiver granted under § 212(c)[4] because they each address admissibility as a legal permanent resident. Several Circuits have addressed whether granting a § 212(c) waiver precludes the INS or the courts from relying on the underlying offense to bar other forms of immigration relief or benefits. Each of those Circuits have held it appropriate for the government to consider an alien's criminal conviction even if the alien had received a § 212(c) waiver admitting the alien as a legal permanent resident despite he or she being otherwise inadmissible due to the conviction. Chan v. Ganter, 464 F.3d 289, 295 (2d Cir. 2006); Rodriguez-Munoz v. Gonzales, 419 F.3d 245, 248 (3d Cir. 2005); Molenda v. INS, 998 F.2d 291, 294-95 (5th Cir. 1993); Molina-Amezcua v. INS, 6 F.3d 646, 647 (9th Cir. 1993). "The decision of whether to award section 212(c) relief involve[s] only a balancing of the 'adverse factors evidencing an alien's undesirability as a permanent resident with the social and human considerations presented [on] his behalf to determine whether the granting of [a section 212(c) waiver] appear[s] in the best interests of this country.'" Chan, 464 F.3d at 295 (citation omitted). The decision, however, does not involve a finding of good moral character. Section 212(h) and 212)(i) waivers, like a Section 212(c) waiver, apply merely to the determination of whether an alien may be admitted as a legal

---

[2] Section 212(h) allows an immigration judge to admit an immigrant who is otherwise inadmissible due to crimes of moral turpitude (except murder and torture), prostitution, and single simple possession of thirty grams or less of marijuana for certain individuals.

[3] Section 212(i) allows an immigration judge to admit an immigrant who is otherwise inadmissible due to fraudulent or material misrepresentation. See 8 U.S.C. §§ 1182(i).

[4] Congress repealed INA § 212(c) in 1996 but such relief is still available to those who pled guilty before the repeal. Alexandre v. U.S. Att'y Gen., 452 F.3d 1204, 1207 (11th Cir. 2006).

permanent resident despite a finding of inadmissibility and do not involve a finding of good moral character.

An application for naturalization is entirely different from an application for legal permanent residence. An alien can only apply for naturalization once he or she has already been a legal permanent resident for a period of years and has shown that he or she is a person of good moral character. Simply because an alien is granted legal permanent resident status does not mean that he or she is automatically granted citizenship. Many in this country remain legal permanent residents without ever attaining citizenship either because they fail to meet the statutory requirements or because they voluntarily choose to remain so. Although Socarras was granted a waiver allowing her to become a legal permanent resident despite her earlier conviction, that waiver has no bearing on the separate determination of her application for naturalization. The USCIS properly considered Socarras' December 1999 conviction in denying her application for naturalization.

        2.       Five-year Statutory Period

Socarras also argues that USCIS could not consider her December 1999 conviction when it denied her naturalization application because she had the requisite good moral character during the five years prior to filing her naturalization application in 2007. She points to INA § 316(a)(3), 8 U.S.C. § 1427(a)(3), to support her position. Pursuant to § 316(a)(3), the statutory period for which good moral character is required for naturalization purposes begins five years prior to filing the naturalization application and continues until the applicant has become a United States citizen. INA § 316(a)(3); 8 U.S.C. § 1427(a)(3). Determinations of good moral

character, however, are not limited to the five year period preceding an alien's application for naturalization. Section 316(e) provides:

> In determining whether the applicant has sustained the burden of establishing good moral character and the other qualifications for citizenship specified in subsection (a) of this section, the Attorney General shall not be limited to the applicant's conduct during the five years preceding the filing of the application, but may take into consideration as a basis for such determination the applicant's conduct and acts at any time prior to that period.

INA § 316(e); 8. U.S.C. 1427(e). See also United States v. Hovespian, 422 F.3d 883, 886 (9th Cir. 2005).

Moreover, an applicant convicted of an aggravated felony is precluded under INA § 101(f)(8), 8 U.S.C. § 1101(f)(8), from establishing good moral character regardless of when the conviction occurred. Chan, 464 F.3d at 294 (citation omitted). Under INA § 101(f)(8), "[n]o person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is or was . . . one who at any time has been convicted of an aggravated felony as described in [§ 1101(a)(43)]." INA § 101(f)(8); 8 U.S.C. § 1101(f)(8). The principle that an applicant convicted of an aggravated felony is precluded from establishing good moral character is supported by a comparison of § 101(f)(8) and § 101(f)(5).[5] Chan, 464 F.3d at 294. Section 101(f)(8) refers to an applicant who has committed an aggravated felony "at any time." Section 101(f)(5), in contrast, refers to an applicant who has committed two or more gambling offenses "during such period," which refers to the five year statutory period. If Congress had wanted to limit the aggravated felony

---

[5] INA § 101(f)(5), 8 U.S.C. § 1101(f)(5), provides: "No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was . . . one who has been convicted of two or more gambling offenses committed during such period."

9

preclusion to the statutory five year period, it could have used the "during such period" language it used in § 101(f)(5). Id. Congress, instead, chose not to limit the aggravated felony preclusion to the five year statutory period. Id. In light of the foregoing, although Socarras committed her aggravated felony more than five years prior to her naturalization application, she "remains one who has committed an aggravated felony, and therefore, [she] may not receive naturalization." Chan, 464 F.3d at 294.

### C. Socarras' Argument that Material Facts are in Dispute

As an initial matter, Socarras has not "by affidavits or as otherwise provided in [Rule 56(e)] . . . set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Socarras has rested merely on her pleadings and allegations in her Response. Socarras has submitted no additional proof that a factual dispute exists. Nonetheless, the Court will address the merits of her arguments.

#### 1. Whether Restitution of $1,114,676.04 Could be Attributed Solely to Socarras

Socarras argues that a factual dispute exists as to whether the restitution amount imposed by the Court could be attributed solely to her. Regardless of whether such a dispute exists, this fact is not material. Socarras's naturalization application was denied on the grounds that she lacked good moral character because her December 1999 conviction was deemed an aggravated felony. (Def. Mot. Sum. J. Ex. 4-4.) In determining whether the amount of loss to the victim meets the criteria for an aggravated felony, the operative fact is whether "the specific circumstances surrounding," Socarras' commission of a fraud and deceit crime involved a loss to the victims that exceeded $10,000. Nijhawan 129 S.Ct. at 2302. Socarras has conceded that the loss amount to the victims here exceeded $10,000.

      2.      Whether the United States Falls within the Definition of a "Victim" Under INA § 101(a)(43)(M)(i)

Socarras argues that a factual dispute exists as to whether the United States Government falls within the definition of a "victim" under INA § 101(a)(43)(M)(i), 8 U.S.C. § 1101(a)(43)(M)(i). USCIS denied Socarras' naturalization under § 101(a)(43)(M)(i) and thus, interpreted that provision to include the United States Government, or HHS, as a "victim." Such an interpretation is reasonable. Balogun v. United States Att'y Gen., 425 F.3d 1356, 1361-62 (11th Cir. 2005) (holding as reasonable the Board of Immigration Appeals' interpretation that the government was a victim within INA § 101(a)(43)(M)(i), 8 U.S.C. § 1101(a)(43)(M)(i)). In Balogun, the plaintiff pointed to subsection (ii) of INA § 101(a)(43)(M) to support the contention that the United States is not a "victim" within subsection (i). The Court held that plaintiff

> ignores the obvious point that it would not have made any sense for Congress to use the broader term "victim," which includes individuals and corporate entities, in subparagraph (ii); only the government can be victimized by tax evasion which is all that subparagraph (ii) addresses. In contrast, the victims of fraud or deceit generally, which is what subparagraph (i) addresses, can include an individual, a corporate entity, or the government. That is why Congress used the inclusive term "victim" in subparagraph (i) while it specified the government as the victim in subparagraph (ii). If Congress had wanted to limit the definition of "aggravated felony" to crimes in which the victims were persons and corporate entities, as Balogun suggests, it could have used the term "persons" in section 1101(a)(43)(M)(i). Instead, Congress used the broader term "victim."

While this Court must review an administrative agency's statutory interpretation *de novo*, it must defer to the agency's interpretation if it is reasonable. See Chevron U.S.A., Inc. v. Natural Resources Defense Counsel, Inc., 467 U.S. 837, 844 (1984) ("We have long recognized . . . the principle of deference to administrative interpretations."); Farquharson v. U.S. Att'y Gen.,

246 F.3d 1317, 1320 (11th Cir. 2001) ("[W]e defer to the [administrative agency's] interpretation if reasonable."). Accordingly, the Court will not overturn the USCIS' interpretation in this case.

IV.  CONCLUSION

For the foregoing reasons, it is

ORDERED AND ADJUDGED that Defendants' Motion for Summary Judgment (dkt # 4) is GRANTED. The Clerk of the Court is instructed to CLOSE this case. All pending motions are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this 25th day of November, 2009.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc:   All counsel of record